UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                Plaintiff,

        v.

JESUS RIVERA,

                Defendant.
_____

REPORT & RECOMMENDATION

17-CR-6094G

## PRELIMINARY STATEMENT

By Order of the Hon. Frank P. Geraci, Jr., Chief United States District Judge, dated July 27, 2017, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A) & (B).  (Docket # 28).

On June 27, 2017, the grand jury returned a one-count indictment against Jesus Rivera ("Rivera"), Robert Ian Thatcher and Terrance Washington, charging them with conspiring to manufacture, possess with intent to distribute, and distribute furanyl fentanyl and U-47700, in violation of 21 U.S.C. § 846.  (Docket # 22).  Currently pending before the Court is Rivera's motion to suppress statements he made on July 26, 2017.  (Docket # 94).  For the reasons discussed below, I recommend that the district court deny Rivera's motion.

## FACTUAL BACKGROUND

On July 26, 2017, Rivera was arrested in Johnson City, New York, pursuant to a warrant issued on the indictment.  (Docket ## 25; 118 at 1; 121 at 2).  Following his arrest, he was placed in a law enforcement vehicle and transported to the United States Courthouse in

Rochester, New York, for his arraignment. (*Id.*). Rivera was accompanied on the drive by Drug Enforcement Administration ("DEA") Special Agent Kevin Black ("Black"). (Docket ## 118 at 1; 121 at 2). During the course of the drive, Rivera made many statements to Black, which he now seeks to suppress on the grounds that he did not waive his *Miranda* rights before speaking to Black.[1]  (Docket ## 94, 118).

In support of its opposition to Rivera's suppression motion, the government has submitted an audio recording of the interaction between Rivera and Black that occurred in the car, which this Court has reviewed. (Docket ## 124, 130). The recording began with Rivera's placement in the vehicle. Rivera asked Black whether "she" would be released that day, apparently referring to another individual who had been detained when Rivera was arrested. Black responded that he planned to release her, although she could be charged at a later date, and Rivera thanked him. Black then commented that they had "plenty of time to talk" because they were going "all the way to Rochester." After a brief pause, Black stated, "I got to read this to you before we talk." Black then recited *Miranda* warnings to Rivera, including that Rivera had the right to remain silent, the right to consult with an attorney before questioning, and the right to have an attorney present during questioning. Following the recitation, Black asked Rivera, "Do you understand?" Rivera responded, "Yes," and Black, without hesitation, began speaking with Rivera. Rivera appeared relaxed during their interaction, answered many of Black's questions, and did not respond to others. Most of the conversation concerned Black's interest in persuading Rivera to consider cooperating. Rivera never asked Black for an attorney, indicated a desire to stop the interview, displayed confusion about the *Miranda* advisement or the questioning,

---

[1] The government has agreed not to offer as evidence in its direct case statements allegedly made by Rivera later that day to Black and Task Force Officer Allen Wood at the DEA office. (Docket ## 111 at 3; 118 at 1).

2

expressed physical discomfort or illness, or exhibited any obvious signs of intoxication. Black provided Rivera with water and offered him the use of a restroom. Black spoke to Rivera on and off, sometimes for long stretches, during the nearly three-hour drive to Rochester and stopped the interview when the car arrived at the courthouse.

## RIVERA'S SUPPRESSION MOTION

Rivera contends that his custodial statements must be suppressed because he did not consent to waiving his *Miranda* rights. (Docket # 118 at 2-3). He maintains that his consent may not be inferred from the fact that he spoke to Black. (*Id.*). Because a verbatim recording has been provided to and reviewed by the Court, and considering the narrow scope of Rivera's challenge (whether the agent's failure to pose an explicit waiver question justifies suppression), this Court agrees with the parties that no evidentiary hearing is needed to resolve the motion. (*See* Docket # 116).

*Miranda* established the well-settled rule that the government may not introduce as evidence a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that privilege. *Miranda v. Arizona*, 384 U.S. 436, (1966). No question exists on the record before the Court that Rivera was in custody and subjected to interrogation by Black during the drive from Johnson City to Rochester. The question is whether Rivera validly waived his *Miranda* rights.

To establish a valid waiver, the government must provide by a preponderance of the evidence "(1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and the consequences of waiving that

right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). To demonstrate the adequacy of a waiver, the government must do more than provide evidence that *Miranda* warnings were given and that the defendant thereafter made an uncoerced statement. *See Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010). The government "must make the additional showing that the accused understood the[] rights." *See id.* Accordingly, "[w]here the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.*

In examining whether a statement was made voluntarily, a court must consider the totality of the circumstances in which it was given "to determine whether the government agents' conduct 'was such as to overbear [a defendant's] will to resist and bring about [statements] not freely self-determined.'" *United States v. Kaba*, 999 F.2d 47, 51 (2d Cir.) (quoting *United States v. Guarno*, 819 F.2d 28, 30 (2d Cir. 1987) (citations omitted)), *cert. denied*, 510 U.S. 1003 (1993). In evaluating the totality of the circumstances, the court must assess: "(1) the characteristics of the accused, (2) the conditions of the interrogation, and (3) the conduct of law enforcement officials." *United States v. Awan*, 384 F. App'x 9, 14 (2d Cir. 2010) (quoting *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir.), *cert. denied*, 488 U.S. 945 (1988)), *cert. denied*, 562 U.S. 1170 (2011). Where circumstances suggest evidence of "brutality, [p]sychological duress, threats, [or] unduly prolonged interrogation," statements will be deemed involuntary. *United States v. Moore*, 670 F.3d 222, 233 (2d Cir.) (alteration in original) (quoting *United States v. Verdugo*, 617 F.3d 565, 575 (1st Cir. 2010)), *cert. denied*, 567 U.S. 943 (2012).

Based upon the contemporaneous recording of the car ride, I find that Rivera was properly advised of his *Miranda* rights and voluntarily waived them before speaking to Black.

Rivera was placed in the law enforcement vehicle, and Black advised him of his *Miranda* rights and asked him whether he understood those rights. Rivera immediately and unequivocally responded, "Yes." He did not ask Black for an attorney or to stop questioning him. He appeared calm and cooperative during the interview. The recording does not reflect that Black made any threats or promises in order to induce Rivera to speak.

That Black did not explicitly ask Rivera whether he would be willing to waive his rights and answer questions does not warrant suppression of his statements because he clearly indicated that he understood the rights of which he was advised – one of which was his right to remain silent – and chose to answer Black's questions. *See Berghuis v. Thompkins*, 560 U.S. at 385-87 (defendant's waiver could be inferred where the evidence established he was provided a written copy of *Miranda* warnings, each warning was read aloud to defendant, defendant never indicated that he did not understand the rights, defendant provided a statement after remaining silent for almost three hours, and where there was no evidence of coercion); *United States v. Williams*, 2016 WL 6311805, *6 (W.D.N.Y.) (defendant's waiver inferred where defendant was advised of his *Miranda* rights, asked whether he understood them, responded "um-hum" and nodded his head, and answered investigators' questions), *report and recommendation adopted by*, 2016 WL 6952307 (W.D.N.Y. 2016); *United States v. Cleveland*, 2013 WL 4759081, *9 (W.D.N.Y.) ("[law enforcement's] failure to read the last question on the rights card in order to obtain an explicit answer from [defendant] to the waiver question does not require suppression"[;] … [defendant] was advised of his rights, stated that he understood his rights and agreed to speak with [law enforcement][;] [s]uch facts establish that [defendant] knowingly and voluntarily waived his rights – whether he did so explicitly or implicitly"), *report and recommendation adopted by*, 2013 WL 6440949 (W.D.N.Y. 2013).

The recording also refutes any contention by Rivera that his waiver and subsequent statements were not voluntary. Nothing in the record suggests that Rivera's age or characteristics rendered him particularly vulnerable to coercion or that he was intoxicated, sick or in pain. He appeared calm, lucid and cooperative throughout the interview, appeared to understand the questioning, and provided coherent responses to those questions he chose to answer. Black made no promises or threats to induce Rivera to speak.

On this record, I recommend that the district court deny Rivera's motion to suppress the statements he made on June 26, 2017.

## CONCLUSION

For the reasons stated above, I recommend that Rivera's motion to suppress statements **(Docket # 94)** be **DENIED**.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
September 19, 2018

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[2]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

       *s/Marian W. Payson*
       MARIAN W. PAYSON
       United States Magistrate Judge

Dated: Rochester, New York
      September 19, 2018

---

[2] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).